### NETHERLANDS FIRE INS. CO. v. BARRY et al.

(Supreme Court, Appellate Division, First Department. April 20, 1905.)

1. EVIDENCE—TESTIMONY OF CLERK—MATTER INCIDENT TO EMPLOYMENT.

On an issue as to whether defendants ever received a certain letter directing them to cancel an insurance policy, they called their policy clerk, who testified that it was his duty to make out notices of cancellation, deliver them to brokers, and keep memoranda to see that the canceled policies were returned. *Held*, that further testimony of the clerk as to whether all the policies had been sent in that defendants had received orders to cancel, and whether or not he ever received any instructions, or knew of any instructions, from plaintiff to cancel the policy in question, should have been admitted.

2. TRIAL—INSTRUCTIONS.

On an issue as to whether defendants had received a certain letter, the court charged that evidence that a letter was deposited where in due course of business it should have been mailed or received, together with evidence of such a course of business, would sustain a finding of actual receipt of the letter, and stated that there was evidence of such a course of business in plaintiff's office. The court further singled out one of the defendants and commented on his interest in the result and his demeanor on the stand, etc., without making any corresponding reference to any of plaintiff's witnesses. *Held*, that a further charge that there was no direct evidence of any negligence on the part of plaintiff's manager in respect to sending the letter in question was, in view of the whole charge, prejudicial and misleading, as authorizing an inference that there was direct evidence of negligence on defendants' part with respect to the receipt of the letter.

Appeal from Trial Term, New York County.

Action by the Netherlands Fire Insurance Company against Joseph R. Barry and others, partners doing business under the firm name and style of J. Ramsay Barry & Co. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

H. Snowden Marshall, for appellants.
John Notman, for respondent.

LAUGHLIN, J. The defendants were agents for the plaintiff in Baltimore. The action is to recover damages for their failure to cancel a policy of insurance pursuant to instructions alleged to have been mailed to them on the 15th day of September, 1900, by Weed & Kennedy, of New York, who were the managers for the plaintiff in the United States. The defendants in their answer denied that they received the letter directing them to cancel the policy. Whether it was mailed or received was the principal issue litigated upon the trial.

It appears that the defendants on the 7th day of September, 1900, as agents of the plaintiffs, duly issued policy No. 112,326 to the Carroll Manufacturing Company, of Baltimore, insuring certain buildings and property against fire for the period of one year commencing August 24, 1900. This is the policy which it is claimed

they should have canceled. It was not canceled, and the property was destroyed by fire early in the morning of the 6th of October, 1900. The amount which the plaintiff was obliged to pay under the policy on account of this loss, together with interest thereon, constitutes the damages sought to be recovered. The defendants, as agents of the plaintiff, had issued another policy, No. 112,325, to the Carroll Manufacturing Company, upon other property belonging to it, insuring the owner against fire for the period of one year commencing August 18, 1900. According to the testimony presented on behalf of the plaintiff, Weed & Kennedy, of New York, the general agents in the United States, on the 14th day of September, 1900, received notices from defendants of the issuance of these policies, but the notices came under separate covers, and the one concerning the policy in question was received last. The uncontroverted evidence shows that an employé of Weed & Kennedy who received from the agents daily reports of the policies issued, and was authorized to direct their cancellation if he did not deem the risks desirable, wrote the defendants on said 14th day of September, 1900, directing them to cancel policy No. 112,325, and this letter was duly received, and the policy revoked and returned to Weed & Kennedy on the 27th day of the same month. This employé testified that later in the day he also wrote a letter to the defendants directing the cancellation of policy No. 112,326, and signed the firm name thereto, adding his initial, and placed it in a basket on his desk, from which it would be taken in the ordinary course of business by one of the mailing clerks, to be copied into the letter book and mailed; that in dictating the letter he dictated the address of the defendant as Baltimore, Md., to be incorporated therein; that the firm used stamped envelopes, with the usual card printed thereon for the return of the letter, if not delivered after five days, to the address of the firm; that if the letter had been returned it would have come to him in the ordinary course, but that it never was returned to his knowledge; that on the 2d day of October thereafter he wrote the defendants complaining of their neglect to return two policies, No. 112,326, being the one in question, and No. 112,319, which had been ordered canceled, and on October 4th received a letter from the defendants, in reply thereto, stating that the policies had been canceled and returned. Weed & Kennedy employed two letter and mailing clerks, each of whom testified that it was their duty to collect, copy into the letter book, inclose in a stamped envelope with the printed request for return thereon, to compare the address in the body of the letter with the address on the envelope, seal and mail, all letters found on the desks in the office; that up to 6 p. m. the letters were mailed by dropping them in the United States mail chute in the building, and that where any remained to be mailed after that hour one or the other of them took them to the general post office; that one or other of them mailed all letters found in the baskets on the desks on the 14th and 15th days of September, 1900, "in the usual course"; that the letter in question was copied in the appropriate letter book and mailed on the 14th day of September. They had no distinct recol-

lection of this particular letter, and it is evident that their testimony that it was mailed on the 14th was based on their custom, and an inference drawn from the fact that it was dated on that day and copied in the letter book. The letter was then read from the letterpress copy, as follows:

"September 14, 1900.

"Messrs. J. Ramsay Barry & Co., Baltimore, Md.—Gentlemen: Kindly cancel Policy No. 112326 Carroll Mfg. Co. This is a risk that we prefer not to be interested on, and return of the policy will be appreciated.

"Very truly yours,     Weed & Kennedy, Managers. G."

The firm had separate letter books for each insurance company which they represented. The letter was copied into the firm's Netherlands Insurance Company book with letters of the 15th of September, and was preceded by 27, and followed by 7, letters of that date. The defendant Boyce testified that he had entire charge of the correspondence, and received and answered all letters for the defendants; that he never received or saw this letter; that, upon receiving the letter directing the cancellation of the other policy, he immediately wrote the agents through whom they received the policy that his firm had been directed to cancel the same, and requested a return thereof, which was complied with; that, when he received the letter of October 2d concerning the return of the policy in question and another, he turned to his firm's cancellation clerk "and asked him if these letters and policies had been returned to the company as canceled, and he replied that all of them except one of the Columbia Motor Company had been," or said to the cancellation clerk, "Richard, have all the Netherland policies been returned that were ordered canceled?" and received the reply that all except the Columbia Motor Company policy had been, and that he thereupon turned to the stenographer and dictated the reply of October 3d; that policy No. 112,319 mentioned in both letters was not the Columbia Motor Company policy; that his firm had not received any order, and he did not know of any order, to cancel the policy in question, and that he had no reason for saying that it had been canceled, except the information herein quoted, communicated by the cancellation clerk at that time; that in reply to the letter of October 3d he received another letter from Weed & Kennedy dated October 5th, saying that policy No. 112,319 had been received, but the one issued to the Carroll Manufacturing Company had not, and requesting that a further search be made, and the policy returned if found, and complaining of the neglect of the defendants to return promptly canceled policies; that on receipt of this letter he again wrote Weed & Kennedy on the 6th of October, stating that in their letter of September 14th they had requested the cancellation of policy 112,325, and that, if they desired the cancellation of policy 112,326, to notify Messrs. Charles S. Atkinson & Co., insurance brokers in New York, as the defendants' agency for the plaintiff had been discontinued the day before by a special agent of Weed & Kennedy; that when he wrote this letter he had "doubt of the fact that Weed & Kennedy had instructed his firm to cancel the policy in question, and knew that his firm had never received

such instructions"; that the letter of October 2d informed his firm that Weed & Kennedy desired this policy canceled, but that the reason he wrote the letter of October 6th was that they had not been instructed to cancel the policy. The defendants called their policy and cancellation clerk, who testified that as policy clerk it was his duty to write out the orders and send out policies, and as cancellation clerk to make out all notices of cancellation, deliver them to the brokers, and keep the memoranda to see that they were returned, and to communicate with the brokers were the policies not returned within five days; that on October 3d he informed the defendant Boyce that "all the policies had been sent off by the company, with the exception of one—that of the Columbia Motor Manufacturing Company." The witness was then asked, successively, whether or not all of the policies had been sent in that they had received orders to cancel, whether or not all of the policies had been sent in, whether or not he had received at that time directions to get any policy which he did not have in other than the Columbia Motor Manufacturing Company, and whether or not he ever received any instructions, or knew of any instructions, from Weed & Kennedy to cancel policy 112,326. Each of these questions was objected to by counsel for the plaintiff, upon the ground that it was immaterial, irrelevant, and incompetent. The objections were sustained, and the defendant excepted. It appeared that if the defendants had been directed to cancel the policy the witness had duties to perform concerning the same, and the inference is that the letter instructing the cancellation would come to his attention in the ordinary course of business. The competency of the evidence is one thing, its probative force is quite another. Of course, it was possible for the defendant Boyce, who had charge of receiving the mail, to have received directions to cancel a policy, and not to have brought the letter to the attention of this witness. The testimony of the witness, if received, would not necessarily tend to show that Boyce did not receive the letter; but it was evidence which the defendants were entitled to present to the jury for the purpose of showing that the letter did not come to the hands of any one of the defendants or their employés authorized to act and having a duty to perform concerning the same. The jurors might think that Boyce might have received this letter and have turned it over to the witness and have forgotten about it, and thus be free from the charge of intentionally giving false testimony. It is readily conceivable that, without a suggestion on the part of counsel for the plaintiff, the defendants might suffer at the hands of the jury for not showing that none of their employés into whose hands the letter would have come in the ordinary course of business, and who had a duty to perform concerning it, ever received or saw it. To this extent, we are of opinion that the evidence should have been received.

We are also of opinion that the court erred to the prejudice of the defendants in instructing the jury. The court charged that "there is no direct evidence in the case of any negligence on the part of the office of Weed & Kennedy, the plaintiff's managers, in re-

spect to the sending of the letter of instructions to cancel the policy, 112,326, in question," and counsel for defendants duly excepted thereto. This instruction was given pointedly, and the fair inference from it, and from what preceded and followed, was that there was direct evidence of negligence on the part of the defendants with respect to the receipt of the letter. The court had informed the jury "that evidence that a letter was deposited where in due course of business it should have been mailed or received, with evidence of such a course of business, will sustain a finding of actual receipt; but it does not raise a necessary or legal presumption of it." Immediately following this, the jury were instructed that the defendants had produced and relied upon the testimony of the Boyce "whom you have seen upon the stand, and whose credibility you will determine for yourselves." There was no reference in the charge to the appearance or credibility of the witnesses called by the plaintiff. The jury were then instructed that if they believed the testimony adduced by the plaintiff as to the dictation of the letter—

"And that there was a system under which such a letter would necessarily go to the United States post office authorities, you will then consider whether the denial of Mr. Boyce of its having been received countervails the evidence adduced by the plaintiff. There is one rule which it is worth reminding you of, gentlemen of the jury, and that is that neither the gentlemen of the jury nor the court may disregard the testimony of a witness who has been in no wise impeached or contradicted. If you find that a witness who is interested in the outcome of an action has testified in any respect falsely, you are at liberty to disregard his testimony altogether."

Later on in the charge the court again singled out the defendant Boyce, and instructed the jury concerning his evidence:

"That, if the jury believe from the evidence that the defendant Boyce has not testified truly with respect to any material fact inquired about, they must consider that in weighing his evidence as to the instructions to cancel the policy in question. That the evidence presented by the plaintiff is sufficient in law to support a verdict as to the sending of the letter to cancel the policy in question, and, if the jury do not believe the evidence of the witness Boyce, there will remain the persuasive facts and circumstances, warranting the jury in finding that the letter was mailed."

The defendant Boyce received the further attention of the court in an instruction as follows:

"That the jury must take into consideration all the evidence of the witness Boyce, and his appearance and demeanor on the stand while under examination, in determining what credibility is to be given to his evidence or any part thereof. That, in determining the weight to be given to the evidence of the witness Boyce, the jury must also take into consideration his interest, as a defendant in the case, in escaping liability for damages, and the effect which such interest may have upon his testimony."

We have quoted nearly one-half of the entire charge. Its tenor, as a whole, was prejudicial to the defendants. There was no allusion to the fact that the witnesses for the plaintiff had no distinct recollection of mailing this particular letter, or that, if negligent in the performance of their duty, they might be reluctant to admit it. The testimony of the defendant Boyce was quite as direct that he did not receive the letter as the testimony of the plaintiff's wit-

nesses that it was mailed, when they had no distinct recollection. on the subject, and were merely testifying to a course of business. The jury would naturally infer from the instructions that the testimony given on behalf of the plaintiff was more direct and had. greater probative force than that given in behalf of the defendants. A trial judge must be allowed considerable latitude in drawing the attention of the jury to the material evidence in the case and in commenting thereon; but in the case at bar we are of opinion that the learned trial justice conveyed too plainly to the jury his. own convictions upon the evidence, and that the instruction that there was no direct evidence of negligence on the part of Weed & Kennedy was misleading, and, if inadvertently given, should have been corrected when exception was taken thereto.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.